## W. H. Nichols and A. B. Cambier, Receivers, Appellants, v. Estate of James A. Cunningham, Deceased, Appellee.

1. WITNESSES—*when stockholder of claimant company incompetent.* A stockholder in a company which is seeking to establish a claim against the estate of a deceased stockholder of a bankrupt corporation is an incompetent witness in support of the claim though he holds but one share and was not a stockholder at the time of the transaction concerning which his testimony is offered.

2. CORPORATIONS—*stockholder of claimant company may properly be permitted to identify books.* Where a company files a claim against the estate of a deceased stockholder of a bankrupt corporation, it is proper to permit a witness who was a bookkeeper of such company and is a stockholder to identify its books.

Appeal from the Circuit Court of Vermilion county; the HON. WILLIAM B. SCHOLFIELD, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed May 19, 1913.

J. B. MANN and WALTER C. LINDLEY, for appellants; LINDLEY, PENWELL & LINDLEY and MERTON NEWBERRY & JACOBSON, of counsel.

J. H. DYER and REARICK & MEEKS, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

The Northern Live Stock Company was incorporated under the laws of the state of Wisconsin, May 23, 1906, with a capital stock of $60,000, and Frank T. Stare, C. S. Crary, James A. Cunningham, John L. Hamilton and William Moore were the subscribers to such stock. Shortly after its organization of the company it engaged in the sheep business and bought largely in the southwest and west and shipped to Wisconsin for the purpose of feeding and pasturing.

Some time before the organization of the Northern Live Stock Company, the Waukesha Canning Com-

pany was organized, and C. S. Crary, John L. Hamilton, William Moore, Frank T. Stare and James A. Cunningham were numbered among its stockholders and officers. After a short but active career the Northern Live Stock Company became bankrupt and went out of business and left among its creditors the said Waukesha Canning Company, which had just closed its doors and gone into the hands of receivers, its claim amounting to above $45,000. James A. Cunningham died on the 11th day of January, 1910, and letters of administration were issued. Shortly thereafter the Waukesha Canning Company, by its receivers, filed a claim against the estate of Mr. Cunningham, for the sum of $45,067.33, as follows:

"In the matter of the estate of James A. Cunningham, deceased. Estate of James A. Cunningham, deceased.

To the Waukesha Canning Company, William H. Nichols and A. B. Cambier, Receivers, of Waukesha, Wisconsin, Dr.

To cash loaned to and advanced for the use and benefit and at the special instance and request of James A Cunningham (the above named decedent)— John L. Hamilton, Charles S. Crary, William Moore and Frank T. Stare, as co-partners, doing business at that time at Waukesha, Wisconsin, under the firm name and style of the Northern Live Stock Company, between and including May 2, 1906, and January 27, 1909, and of which a statement is attached, made a part hereof and marked schedule 'A.'

$140,075.86

Less credits as per schedule 'B' attached 95,008.52

Balance due claimant $ 45,067.34''

On the 25th day of April, 1911, an amended claim was filed, as follows:

"To moneys and cash loaned and advanced for the use and benefit and at the special instance and request

of James A. Cunningham, the above named decedent, and John L. Hamilton, Charles S. Crary, William Moore and Frank T. Stare: said above named parties, including said decedent, being personally liable jointly and severally for the said advancements, the same having been advanced by claimant for the use and benefit of the Northern Live Stock Company, and at its special instance and request, and at the special instance and request of the above named parties, and each of them, before one-half of the capital stock of the said Northern Live Stock Company had been subscribed and at least twenty per centum thereof had actually been paid in, as required by the Wisconsin statute, and said company being at the respective times of said advancements and loan authorized by said parties, including said decedent, to transact the business of procuring said advancements and loans,'' as shown by statement attached, showing amount the same as in the original claim.

The claim was heard in the probate court of Vermilion county and was not allowed, and upon an appeal perfected to the circuit court of said county, such proceedings were had that the court found the issues for the estate, and entered judgment for costs against the claimant, whereupon this appeal has been perfected bringing the record before us.

It will be observed that in the first claim for probate, the items referred to cash loaned and advanced for the use and benefit, and at the special instance and request, of James A. Cunningham, John L. Hamilton, Charles S. Crary, William Moore and Frank T. Stare, partners, doing business under the firm name of the Northern Live Stock Company, in the sum of $45,-067.34.

In the amended claim filed April 25, 1911, the account stated is for money loaned and advanced at the special request of James A. Cunningham, et al., the same having been advanced by claimant for the use

and benefit of the Northern Live Stock Company and at the special instance and request of the said parties and each of them before twenty per centum of the capital stock of the corporation had been paid in, as required by the statute of Wisconsin.

It would seem, under the amended claim as filed against the estate of Mr. Cunningham, that the validity of the claim is to be determined by the question of whether or not the twenty per centum of the capital stock subscribed had been paid, as required by the laws of Wisconsin, at the time or before the credit was given, if any is shown to have been given, to the Northern Live Stock Company. Under the amended claim the question presented is not whether the claimant extended credit to James A. Cunningham, and by reason thereof should have a claim allowed against his estate, but, first, whether James A. Cunningham was a stockholder in the Northern Live Stock Company, and, second, whether he paid into the treasury of said company the twenty per centum upon the shares of stock subscribed by him, before the company contracted the debts in question; and in determining these questions we are brought face to face with several difficult questions of fact and a few question of law.

It is contended by the appellees that the books of the company introduced in evidence show that on January 23, 1906, the per centum required by the statute of Wisconsin to be paid in upon the capital stock before a corporation can transact business and contract debts without the stockholders incurring personal liability, was paid in by Mr. Cunningham, while appellants contend that the required per centum was not paid at that time and that the entry referred to by the appellees has been fully explained and shown to be a loan or advancement, and that this was shown by the oral evidence introduced upon the trial of the cause.

By reference to the original claim filed in this case against James A. Cunningham's estate, and the other

parties named therein, the claim is sought to be sus-
tained as against said James A. Cunningham, and the
others, as partners doing business under the firm name
and style of the Northern Live Stock Company, of
Waukesha, Wisconsin, and from the language used in
the statement of this account we would naturally con-
clude that the claim was for money loaned these gen-
tlemen individually, and that the receivers were seek-
ing to hold them liable by reason of many advancements
of money to them, but the amended claim filed seems to
proceed upon the theory that the claimants, at the re-
quest of James A. Cunningham and the other parties
named, had advanced money to the Northern Live
Stock Company, a company having capital stock, and
that because Mr. Cunningham and the other named
parties had failed to pay the required per centum of
such capital stock, the estate of Mr. Cunningham
should be held for the entire loss of the claimant.

On an examination of the statement of account filed
with the original claim, we find an item of $10,000,
which recites that the item of $10,000 was a payment
of twenty-five per centum of the stock subscription of
said Moore, Hamilton, Crary and Cunningham, on June
23, 1906. If this entry is correct, Cunningham and his
co-partners paid the full amount required under the
statute of Wisconsin in order to avoid such liability as
is here claimed, and therefore the corporation could
transact business without the stockholders being per-
sonally liable.

We find, from a comparison of the itemized account
filed with the amended claim, that the item in ques-
tion has been changed, and it does not appear in the
abstract of the amended claim as being a payment of
twenty-five per centum of the stock subscription of
Cunningham, and the others, but is entered as money
advanced by the Illinois Canning Company, and upon
reference to the record we find this item is scratched
and interlined so that it is almost unintelligible.

It is contended by the appellants that all of these seeming irregularities and changes are explained by the oral evidence of Edmund D. Seltzer and other witnesses, who make clear all matters shown by the books in general, and of the $10,000 item in particular.

But, Mr. Seltzer is a stockholder in the company who seeks to have, through its receivers, this claim established, and he is for that reason an incompetent witness. It is said that he was not a stockholder at the time he was first employed as bookkeeper, and did not have any interest in the company until March 17, 1910, when he bought one share, and it is insisted that the fact that he acquired his stock after the transaction in question makes him competent as a witness in favor of his company in the effort to have the claim allowed against the estate of Cunningham.

We think all persons who hold stock in the Waukesha Canning Company, no matter whether it be one share or many, are barred from appearing as witnesses in behalf of the claimant company in which they are stockholders.

"We have held that stockholders in a corporation are interested within the meaning of this (section 2 of chapter 51, R. S.) section of the statute, and are incompetent to testify against the representatives of a deceased party in their own behalf." *Albers Commission Co. v. Sessel,* 193 Ill. 153.

In *Volbracht v. White,* 197 Ill. 298; *Ittner Brick Co. v. Ashby,* 198 Ill. 563 and in *Cronin v. Royal League,* 199 Ill. 228, the same doctrine is recognized and enforced.

In *Ogden Building & Loan Ass'n v. Mensch,* 196 Ill. 554, it is said: "A stockholder in a private corporation is interested in all its transactions, and, of course, in every conveyance to and from it. As the assets of the corporation are increased or diminished, his stock, which is representative of a portion of the assets, is of more or less value." And there the court cited with ap-

proval the holding of the court above quoted from *Albers Commission Co. v. Sessel, supra.*

Under the rule thus announced in the above mentioned authorities, no person holding stock in the Waukesha Canning Company was competent as a witness in support of the claim against the estate of Cunningham.

It follows, therefore, that all of the evidence offered by the witness Seltzer was improper, except the identification by him of the books and we assume it was so regarded by the trial court, in as much as several important items had been changed favorably to the claimant. At least a part of the entries could not have been received and considered as original entries because of the alterations and changes made by some one interested in behalf of the claimant.

The rule which is applied to the bookkeeper, and under which his evidence is held to be improper, must of necessity be applied to the evidence of Mr. Stare, Mr. Crary, Mr. Hamilton and Mr. Moore, and when their evidence and letters passed from one to the other is eliminated, this claim rests upon an unreliable book account that bears evidence of having been doctored to suit the occasion and the evidence of W. E. Alkire, and we confess his evidence is attended with great uncertainty, inconsistency and unreasonableness. The court, who had the opportunity to see and hear him testify, evidently did not put reliance in his statements, but even had his evidence been reasonable and consistent, it is not sufficient to overcome the plain entry made by the claimant in its books at a time when there was no reason for a false or fraudulent entry.

In support of the truthfulness of the claim of payment of the $10,000 upon the stock subscribed for, we find a draft was sent by the Illinois Canning Company to the Northern Live Stock Company on the day in question by Cunningham and his three co-subscribers

to the capital stock of said company, with a notation that it was in payment of twenty-five per centum of the subscriptions of the several subscribers to the said capital stock, and the same was acknowledged and placed to the credit of the subscribers aforesaid and so remained to their credit until after the death of Cunningham.

Under all of the proper evidence in this case and the circumstances attending the whole transaction, we are convinced that the proof shows that Cunningham did pay the required percentage of his subscription to the capital stock of the said company at the time of the entry made as above stated, and that the claim against his estate has not been sustained by the proof in the record.

Believing that the finding and order of the trial court was right, the judgment is affirmed.

*Affirmed.*